Donald L. Samuels (CA State Bar No. 126287)
*donald.samuels@bryancave.com*
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Katherine Keating (CA State Bar No. 217908)
*katherine.keating@bryancave.com*
BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone: (415) 268-2000
Facsimile: (415) 268-1999

Attorneys for Plaintiff
CITY OF BEVERLY HILLS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| CITY OF BEVERLY HILLS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ROBERT BERRY, DBA BLACK BEVERLY HILLS,<br><br>　　　　　Defendant. | Case No. 2:14-cv-04618 RSWL (MANx)<br><br>**OPPOSITION OF PLAINTIFF CITY OF BEVERLY HILLS TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Hon. Ronald S.W. Lew<br><br>Date:　September 16, 2014<br>Time:　10:00 a.m.<br>Place:　312 N. Spring St., Crtrm 21 |

# TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

I. THE CITY DOES NOT SEEK TO "PARTIALLY ENFORCE" ITS RIGHTS IN ITS SHIELD MARK .................................................................. 3

    A. Defendant Mischaracterizes the City's Factual and Legal Position ....................................................................................... 4

    B. The City Has Properly Alleged Ownership of its Shield Mark ................................................................................................... 5

    C. The City Has Properly Alleged Likelihood of Confusion ................. 7

II. THE CITY HAS ALSO STATED CLAIMS FOR TRADEMARK DILUTION UNDER THE LANHAM ACT AND CALIFORNIA LAW ........................................................................................................... 9

CONCLUSION .................................................................................................. 10

Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*ACI Int'l*,
　359 F. Supp. 2d at 923 .................................................................................... 10

*AMF Inc. v. Sleekcraft Boats*,
　599 F.2d 341 (9th Cir. 1979) ........................................................................... 8

*Applied Info. Scis. Corp. v. eBay, Inc.*,
　511 F.3d 966 (9th Cir. 2007) ........................................................................ 5, 8

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
　174 F.3d 1036 (9th Cir. 1999) ......................................................................... 4

*California Cooler, Inc. v. Loretto Winery Ltd.*,
　774 F.2d 1451 (9th Cir. 1985) ......................................................................... 7

*China Healthways Inst., Inc. v. Wang*,
　491 F.3d 1337 (Fed. Cir. 2007) ....................................................................... 6

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
　618 F.3d 1025 (9th Cir. 2010) ......................................................................... 8

*Giant Food, Inc. v. Nation's Foodservice, Inc.*,
　710 F.2d 1565 (Fed. Cir. 1983) ....................................................................... 7

*In re Nat'l Data Corp.*,
　753 F.2d 1056 (Fed. Cir. 1985) ....................................................................... 6

*Jada Toys, Inc. v. Mattel, Inc.*,
　518 F.3d 628 (9th Cir. 2008) ......................................................................... 10

*James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.,*,
　2013 U.S. Dist. LEXIS 24824 (C. D. Cal. Feb. 21, 2013) ................................ 6

*Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*,
　963 F.2d 350 (Fed. Cir. 1992) ......................................................................... 8

*Kythera Biopharm., Inc. v. Lithera, Inc.,*,
　2014 U.S. Dist. LEXIS 22208 (C.D. Cal. Feb. 20, 2014) ............................ 1, 3

*M2 Software, Inc. v. Madacy*,
　Entm't, 421 F.3d 1073 (9th Cir. 2005) .......................................................... 8, 9

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
　638 F.3d 1137 (9th Cir. 2011) ...................................................................... 4, 5

*Official Airlines Guides, Inc. v. Goss*,
　6 F.3d 1385 (9th Cir. 1993) ..................................................................... passim

*OSU Student Alliance v. Ray*,
 699 F.3d 1053 (9th Cir. 2012) .................................................................................. 3

*Otter Prods., LLC v. Berrios*,
 2013 U.S. Dist. LEXIS 147139 (C.D. Cal. OCt. 10, 2013) ............................. 4, 5

*Packard Press, Inc. v. Hewlett-Packard Co.*,
 227 F.3d 1352 (Fed. Cir. 2000) ............................................................................... 6

*Playmakers, LLC v. ESPN, Inc.*,
 297 F. Supp. 2d 1277 (W.D. Wash. 2003) ............................................................ 6

**FEDERAL STATUTES**

15 U.S.C. § 1114 ................................................................................................... 3, 4

15 U.S.C. 1125 ....................................................................................................... 3, 4

**STATE STATUTES**

Bus. & Prof. Code § 14247 ....................................................................................... 3

**FEDERAL RULES**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ........................................... 3

**OTHER AUTHORITIES**

*Sprague Elec. Co. v. Erie Resistor Corp.*,
 101 U.S.P.Q. 486 (Comm'r Pat. June 15, 1954) .................................................. 7

*Trademark Manuel of Exam. Proc.*
 (Apr. 2014) § 1213.08(a)(1) .................................................................................... 7

# INTRODUCTION

Defendant's Motion to Dismiss is fatally flawed because it (1) ascribes to the City a factual and legal position the City has never espoused; and (2) uses that position to apply a doctrine of trademark law that does not exist.

The Motion depends on the assertion that trademark law cannot recognize a likelihood of confusion between the iconic Beverly Hills Shield Mark (  ) and the virtually identical design mark used by Defendant ( ) if the City does not also assert a likelihood of confusion between the phrases "Beverly Hills" and "Black Beverly Hills." Defendant contends that if the City does not object to Defendant's use of the phrase "Black Beverly Hills" standing alone, then its objection to Defendant's mark as a whole is an impermissible attempt to "partially enforce" the City's trademark rights. This "partial enforcement" theory is unsound as a matter of basic trademark law and cannot be squared with the fundamental principle that "marks must be considered in their entirety and as they appear in the marketplace." *Official Airlines Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993).

Defendant does not otherwise dispute that the City has sufficiently alleged both (1) ownership of a valid, protectable trademark; and (2) a likelihood of confusion based on Defendant's use of its mark. "Such is enough to state a claim for trademark infringement." *Kythera Biopharm., Inc. v. Lithera, Inc*., 2014 U.S. Dist. LEXIS 22208, at *25 (C.D. Cal. Feb. 20, 2014). Additionally, Defendant has not even attempted to offer any grounds for dismissing the City's claims for trademark dilution under federal and state law, which – contrary to Defendant's assertion – are not "dependent on a proper claim for trademark infringement." Def.'s Mem. P. & A. ("MPA") at 1. In short, there is no basis for granting the Motion to Dismiss.

**BACKGROUND**

The City brought this action to protect its Beverly Hills shield design mark (the "Shield Mark") from infringement and dilution after Defendant refused to stop using a virtually identical mark in connection with his apparel business. At issue in this case is Defendant's attempt to commercially exploit a variation of the Shield Mark as a brand for clothing and related retail services. The use of the words "Black Beverly Hills" as a geographic indicator relating to a community in Los Angeles is not at issue.[1]

As alleged in its Complaint, the City owns numerous federal registrations for variations of its Shield Mark (shown below), which it has used in connection with a variety of goods and services for more than forty years. Compl. at ¶¶ 8-16 & Exhs. A and B (copies of registration certificates).

   

The goods and services encompassed by these registrations include t-shirts, hats, and related online retail store services. Compl. at ¶¶ 12-15.

In September 2013, the City objected to Defendant Robert Berry's use of the mark shown below (the "BBH Shield Mark") for his online retail store featuring t-shirts and hats:



---

[1] Defendant asserts that "Black Beverly Hills" is the name of a "community located in and around Ladera Heights and View Park in Los Angeles." MPA at 1, 4. Whether or not this is true, it is irrelevant to the City's claims, which are based not on the words "Black Beverly Hills" as a geographic identifier but on Defendant's commercial use of a mark that, taken as a whole, is likely to cause confusion with and dilute the distinctiveness of the City's Shield Mark.

*Id.* at ¶¶ 17-20, 29 & Exhs. C, D.

Over the next nine months, the City attempted to persuade Defendant to stop using the BBH Shield Mark. *Id.* at ¶ 29 & Exh. D. The City assured Defendant that it did not object to his use of the phrase "Black Beverly Hills" standing alone but explained that the combination of the phrase with the shield design elements resulted in a mark that both infringed and diluted the City's Shield Mark. *Id.*

Despite the City's efforts, Defendant persisted in using the BBH Shield Mark. Finally, in June 2014, the City filed this action for false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)); infringement of a federally registered trademark under the Lanham Act (15 U.S.C. § 1114); trademark dilution under California law (Bus. & Prof. Code § 14247); and trademark dilution under the Lanham Act (15 U.S.C. § 1125(c)).

Defendant responded with a motion to dismiss the City's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that the City had failed to state a cause of action for trademark infringement.

# I.
# THE CITY DOES NOT SEEK TO "PARTIALLY ENFORCE" ITS RIGHTS IN ITS SHIELD MARK

To survive Defendant's motion to dismiss, the City need only "'allege "sufficient factual matter ... to state a claim to relief that is plausible on its face,"'" with the Court "accept[ing] the well-pleaded factual allegations of the complaint as true and constru[ing] them in the light most favorable to" the City. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012) (citations omitted). As this Court has observed, "[t]he question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of its claim." *Kythera*, 2014 U.S. Dist. LEXIS 22208, at *5.

The sole basis for Defendant's Motion to Dismiss is his misguided assertion that in objecting to Defendant's use of the BBH Shield Mark, the City seeks to

"partially enforce" its rights in its Shield Mark. MPA at 1. Defendant argues that if the City does not object to Defendant's use of the phrase "Black Beverly Hills" standing alone, then the City is not seeking to enforce its Shield Mark as a whole but rather seeks to enforce only the design elements of the Shield Mark.

This "partial infringement" framework misstates the City's position and is contrary to basic trademark law, which plainly calls for courts to determine first whether the plaintiff owns a valid, protectable trademark, and then whether there is a likelihood of confusion between plaintiff's mark and defendant's mark, each considered in its entirety as it appears in the marketplace. *See, e.g., Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) ("To prevail on its Lanham Act trademark claim, a plaintiff '"must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."'"); *Official Airlines Guides*, 6 F.3d at 1392 (marks must be considered in their entirety). The cases Defendant relies on for his "partial infringement" theory not only fail to support that theory but contradict it in every material respect.

Under the analysis required by trademark law, the City has stated claims for both infringement of a registered trademark and false designation of origin under the federal Lanham Act.[2]

**A.      Defendant Mischaracterizes the City's Factual and Legal Position**

This is a straightforward case. The City's Shield Mark is a combination of the words "Beverly Hills" and a shield design. Defendant's BBH Shield Mark is a combination of the words "Black Beverly Hills" and a shield design. The City's

---

[2] The analysis for both trademark infringement and false designation of origin under the Lanham Act is the same. *See, e.g., Otter Prods., LLC v. Berrios*, 2013 U.S. Dist. LEXIS 147139, at *7 (C.D. Cal. Oct. 10, 2013) ("A claim for false designation of origin under 15 U.S.C. 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. 1114.") (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 n.6 (9th Cir. 1999)).

position is – and always has been – that Defendant's commercial use of a mark combining the words "Black Beverly Hills" and the shield design infringes and dilutes the City's Shield Mark.

Defendant has taken the City's statement during settlement discussions that it would not object to Defendant's use of the phrase "Black Beverly Hills" standing alone to indicate a geographic area and twisted it into a position the City has never adopted. Namely, Defendant asserts that the City seeks to enforce less than the entirety of its Shield Mark against less than the entirety of the BBH Shield Mark. There is no factual basis for attributing this position to the City, and no legal basis for the theory of "partial trademark infringement" that Defendant has invented as the grounds for its Motion to Dismiss.

### B. The City Has Properly Alleged Ownership of its Shield Mark

In setting out his "partial infringement" theory, Defendant disregards the basic framework for analyzing trademark infringement claims, which begins with the plaintiff's ownership of a valid, protectible mark and then turns to whether the defendant's use of its mark creates a likelihood of confusion. *See, e.g., Network Automation*, 638 F.3d at 1144.

The City has satisfied the threshold element by alleging its ownership of federal trademark registrations for the Shield Mark in connection with the relevant goods and services. These registrations are "prima facie evidence of the validity of" the Shield Mark and of the City's "exclusive right to use the mark on the goods and services, specified in the registration[s]," which include t-shirts, hats, and related retail store services. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) (quotations omitted); *accord*, *e.g., Otter Prods.*, 2013 U.S. Dist. LEXIS 147139, at *8 ("Because Plaintiff alleges that it owns federal registration of the Marks in its Complaint (and because Plaintiff attached the registrations to the Complaint), the Plaintiff has adequately shown the validity of the Marks and its ownership of the Marks.").

Defendant muddles the ownership analysis by asserting, without factual or legal support, that the City's lack of objection to Defendant's use of the phrase "Black Beverly Hills" standing alone means the City "is effectively seeking to enforce … ***blank*** shields" for which it does not own registrations. MPA at 5. Not surprisingly, Defendant cites no authority for the unorthodox proposition that the Court should begin its analysis by dissecting any arguably unprotectable elements from the City's Shield Mark and then treating the mutilated mark as the basis for the City's claims. In fact, Defendant invokes case law saying precisely the opposite:

- "The similarity or dissimilarity of the marks ***in their entirety*** is to be considered with respect to appearance, sound, and connotation." *Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1357 (Fed. Cir. 2000) (emph. added by Defendant);

- "The basic principle in determining confusion between marks is that marks must be compared ***in their entireties***." *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985) (emph. added by Defendant);

- "It is incorrect to compare marks by eliminating portions thereof and ***then simply comparing the residue***." *China Healthways Inst., Inc. v. Wang*, 491 F.3d 1337, 1340 (Fed. Cir. 2007) (emph. added by Defendant);

- "Under the 'anti-dissection rule,' the likelihood of confusion between two marks 'is determined by viewing the trademark as a whole, as it appears in the marketplace.'" *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, 2013 U.S. Dist. LEXIS 24824, at *10-11 (C. D. Cal. Feb. 21, 2013) (quoting *Official Airline Guides*, 6 F.3d at 1389, 1392); and

- "[W]hat is critical is the ***overall*** appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks." *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003).

All of the foregoing quotations are set forth in Defendant's brief. MPA at 4, 6-7.

The very cases Defendant cites dictate that the phrases "Beverly Hills" and "Black Beverly Hills" must be considered part of the parties' respective marks. Even where a mark includes an element that might not be protectable standing

alone, that elements remains a part of the mark and must not be ignored in the likelihood-of-confusion analysis. *E.g.*, *California Cooler, Inc. v. Loretto Winery Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985) ("The composite may become a distinguishing mark even though its components individually cannot."); *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983) ("[I]t is well settled that … disclaimed material still forms a part of the mark and cannot be ignored in determining likelihood of confusion.").

This rule is reflected in trademark registration practice. Where a trademark owner seeks registration of a mark incorporating an element that would be unregistrable standing alone, the registrant's disclaimer of exclusive rights in that particular element is ***not*** a disclaimer of rights in the element as part of the overall mark. *See, e.g., Sprague Elec. Co. v. Erie Resistor Corp.*, 101 U.S.P.Q. 486, 487 (Comm'r Pat. June 15, 1954) ("As used in trade mark registrations, a disclaimer of a component of a composite mark amounts merely to a statement that, in so far as that particular registration is concerned, no rights are being asserted in the disclaimed component standing alone, but rights are asserted in the composite …."); Trademark Manual of Exam. Proc. (Apr. 2014) § 1213.08(a)(i) (standard text for disclaimer of unregistrable matter in trademark registration: "No claim is made to the exclusive right to use '[disclaimed matter]' ***apart*** from the mark as shown.") (emph. added).

Having himself offered clear authority to the contrary, Defendant's insistence that the Court treat the parties' marks as consisting of less than the entirety of the actual marks is inexplicable and legally unsupportable.

### C. The City Has Properly Alleged Likelihood of Confusion

Having sufficiently alleged validity and ownership of its Shield Mark, the City need only allege plausible likelihood of confusion based on the BBH Shield Mark to survive Defendant's motion to dismiss. Because the City has done so, Defendant's motion cannot succeed.

The "second prong of the trademark infringement analysis – the likelihood of confusion resulting from the defendant's alleged infringing use," *Applied Info. Scis.*, 511 F.3d at 972, is based on an application of the eight-factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These factors include the strength of the mark, proximity of the goods, similarity of the marks, and the intent of defendant in adopting the mark. *Id.* Based on the facts alleged in the City's Complaint, a likelihood of confusion between the City's Shield Mark and the BBH Shield Mark is far more than "plausible."

Beginning with the always "critical" factor of similarity, the BBH Shield Mark is virtually identical to the City's Shield Mark. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt*., 618 F.3d 1025, 1031-1032 (9th Cir. 2010) ("Although some of the *Sleekcraft* factors will not always be helpful in assessing the likelihood of confusion, 'the similarity of the marks … has always been considered a critical question in the likelihood-of-confusion analysis.'") (citation omitted). In addition, Defendant uses the BBH Shield Mark in connection with goods and services identical to goods and services encompassed by the City's federal registrations for its Shield Mark, and "[a] diminished standard of similarity is … applied when comparing the marks of closely related goods." *Official Airline Guides*, 6 F.3d at 1392.

As to strength, the City has alleged that its Shield Mark is famous, and "a mark with extensive public recognition and renown deserves and receives more legal protection than an obscure or weak mark." *Kenner Parker Toys, Inc. v. Rose Art Indus., Inc.*, 963 F.2d 350, 353 (Fed. Cir. 1992). Moreover, Defendant's obvious intent to draw on the goodwill embodied in the City's Shield Mark by copying it weighs heavily in favor of likelihood of confusion, as he is presumed to have accomplished his objective. *See, e.g., M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005) ("When the alleged infringer knowingly adopts a mark similar to another's, we must presume that the public will be deceived.").

8

Pl's Opposition to Mot to Dismiss Complaint                    Case No. 2:14-cv-04618 RSWL (MANx)

Defendant does not mention the *Sleekcraft* analysis in his Motion to Dismiss, relying on the fatally flawed "partial trademark infringement" theory to bar the City's infringement and false designation of origin claims as a matter of law. Defendant's insistence that the City's claims depend on "pick[ing] apart the trademarks to compare residual elements that are most similar," MPA at 6, however, is factually and legally unsound.

First, there is no factual basis for the assertion. The City has never suggested that the Court do anything other than consider the City's Shield Mark and the BBH Shield Mark in their entireties. Any intent by the City to "partially enforce" its Shield Mark is entirely the invention of Defendant.

Second, as discussed in section I.B, *infra*, the owner of a trademark that includes matter that might not be protectable standing alone can – in fact, ***must*** – enforce the mark as a whole without first dissecting any unprotectable matter from the mark. The City's non-objection to the phrase "Black Beverly Hills" standing alone lacks the legal significance urged by Defendant. In other words, the City can state – and has stated – a claim based on its entire Shield Mark, and against Defendant's entire BBH Shield Mark, without implicating any "partial enforcement" issues. In sum, Defendant has provided no basis whatsoever for concluding that the City's infringement and false designation of origin claims fail as a matter of law.

## II.
## THE CITY HAS ALSO STATED CLAIMS FOR TRADEMARK DILUTION UNDER THE LANHAM ACT AND CALIFORNIA LAW

Plaintiff asserts that "[a]ll of the counts in the Complaint are dependent upon a proper claim for trademark infringement, which means all rise or fall together." MPA at 1. This statement is incorrect.

The City's claims for state and federal trademark dilution are materially distinct from its claims for infringement and false designation of origin. Dilution protects against the impairment of the distinctiveness of the City's famous Shield

Mark rather than against confusion, and "[n]either federal law nor California state law requires a showing of … likelihood of confusion to succeed on a dilution claim." *Jada Toys, Inc. v. Mattel, Inc*., 518 F.3d 628, 634 (9th Cir. 2008); *see also, e.g., ACI Int'l*, 359 F. Supp. 2d at 923 ("trademark dilution analysis [is] fundamentally different from trademark infringement analysis").[3]

Nothing in Defendant's Motion to Dismiss is directed to the City's dilution claims, which would survive even if Defendant's "partial enforcement" theory had merit. Because that "partial enforcement" theory is legally unsound, the Motion to Dismiss must be denied in its entirety.

## CONCLUSION

Defendant asks the Court to dismiss the City's claims for trademark infringement and false designation of origin based on a theory of "partial trademark enforcement" that Defendant has invented and ascribed to the City. Defendant's entire brief is an exercise in building up and knocking down this straw man and sets forth no grounds on which the Court could dismiss the City's Complaint.

Dated:  August 26, 2014         BRYAN CAVE LLP
                                DONALD L. SAMUELS
                                KATHERINE KEATING

                                By:   /s/ Katherine Keating
                                      Katherine Keating

                                      Attorneys for Plaintiff
                                      CITY OF BEVERLY HILLS

---

[3] The elements of dilution are (1) fame and distinctiveness of plaintiff's mark; (2) commercial use of mark by defendant which (3) began after plaintiff's mark became famous; and (4) likelihood that defendant's use will impair distinctiveness of plaintiff's mark. *Jada*, 518 F.3d at 634.

BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105